UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| JODY L. KOCH )<br>(Social Security No. XXX-XX-4187), )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | 3:11-cv-133-WGH-RLY |

**ORDER SETTING ORAL ARGUMENT**

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, pursuant to the parties' consents and an Order of Reference entered January 19, 2012.  (Docket No. 14).  Briefing is now complete. (Docket Nos. 15, 20, 21).

The parties are hereby **ORDERED** to appear for an **ORAL ARGUMENT** on **TUESDAY, JUNE 5, 2012,** at 9:00 a.m., Evansville time (CDT), in Room 335, U.S. Courthouse, Evansville, Indiana.  Plaintiff and her counsel of record are to appear in person at this oral argument.  Counsel for the Commissioner may appear either in person or by telephone by placing a call to the court's bridge line -- (317) 229-3960.

Each side will be given twenty (20) minutes to argue their position with respect to the matter.

The Magistrate Judge specifically notes three major issues that the parties should be prepared to address: (1) whether Plaintiff's impairment met Listing 14.07A; (2) whether Plaintiff's impairment was severe enough that it substantially equaled Listing 14.07A; and (3) whether the ALJ asked a proper hypothetical question to the VE that incorporated all of Plaintiff's limitations.

**Issues 1 and 2:**

The applicable relevant portion of the Listings in this case provides:

14.07  *Immune deficiency disorders, excluding HIV infection.*  As described in 14.00E.  With:

A.  One or more of the following infections.  The infection(s) must either be resistant to treatment or require hospitalization or intravenous treatment three or more times in a 12-month period.

1. Sepsis; or

2. Meningitis; or

3. Pneumonia; or

4. Septic arthritis; or

5. Endocarditis; or

6. Sinusitis documented by appropriate medically acceptable imaging.

OR

* * * *

C.  Repeated manifestations of an immune deficiency disorder, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

1.  Limitation of activities of daily living.

    2. Limitation in maintaining social functioning.

    3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 14.07. An infection is "resistant to treatment" if it did not respond adequately to an appropriate course of treatment. *Id.* at Listing 14.00C(11).

In his decision finding Plaintiff not disabled, the ALJ concluded that Plaintiff did not meet Listing 14.07A because her last documented sinus infection occurred prior to her alleged onset date and prior to being diagnosed with and treated for an immune deficiency disorder. (R. 19). Furthermore, the ALJ determined that Plaintiff could not satisfy Listing 14.07A because there were no imaging studies documenting Plaintiff's sinusitis.

Listing 14.07A does require a showing of immune deficiency disorder coupled with one of six specific types of infections. There is no dispute that Plaintiff suffered from an immune deficiency disorder. One of the types of infections needed to meet Listing 14.07A is sinusitis documented by appropriate medically acceptable imaging. While the ALJ was correct in noting that there were no imaging studies in the record which documented Plaintiff's sinusitis, the ALJ did find that one of Plaintiff's severe impairments was a history of chronic sinusitis. Listing 14.00B explains that for all immune deficiency disorders "we will make every reasonable effort to obtain your medical history, medical findings, and results of laboratory tests." Consequently, it appears that, if the only obstacle to a finding that Plaintiff met Listing 14.07A was a lack of imaging

studies which documented Plaintiff's sinusitis, it was incumbent on the ALJ to point this out and provide Plaintiff with the opportunity to provide such medical evidence.

With respect to the issue of when Plaintiff was diagnosed with her immune deficiency disorder and when she had sinusitis, the issue is more complex. Pursuant to SSR 80-20, it is the ALJ's duty to determine an onset date of disability based on all of the medical evidence. As explained by the Seventh Circuit, medical evidence is the primary factor in determining the onset date of a disability, and an onset date can never be inconsistent with the medical evidence. *Lichter v. Bowen*, 814 F.2d 430, 434 (7th Cir. 1987). A claimant's onset date is to be adjusted based on the claimant's work history. *Nolen v. Sullivan*, 939 F.2d 516, 519 (7th Cir. 1991). However, the Magistrate Judge has been unable to find any relevant legal authority permitting the ALJ to disregard relevant medical evidence from a time prior to the adjusted onset date when determining whether an impairment is severe at step two or meets a listing at step three. If the medical evidence points to a particular onset date, but the claimant continued to engage in substantial gainful activity beyond that date, then the claimant does not meet the definition of disability under the Social Security regulations while she was still working, and she cannot obtain benefits for that time period. However, it is the Magistrate Judge's view that, if the medical evidence demonstrates that Plaintiff met Listing 14.07A prior to ceasing substantial gainful activity, that medical evidence can still be relied on to make a

disability determination once Plaintiff no longer engaged in substantial gainful activity.

In this case, the medical evidence in the record essentially begins in January 2007, but reveals that, prior to January 2007, Plaintiff had been seen extensively for a history of allergic rhinitis and chronic sinusitis. (R. 199-200). Plaintiff's treating physician, Anne McLaughlin, M.D., had already performed one set of testing and, according to the medical records, a second set of testing, occurring on February 2, 2007 (R. 250-51), confirmed that Plaintiff's immunoglobulins had not responded to immunization (R. 203). Based on Plaintiff's two sets of abnormal lab work, Dr. McLaughlin diagnosed specific antibody deficiency which is a form of immune deficiency disorder. (R. 203). Plaintiff also had symptoms of a sinus infection on February 16, 2007. (R. 201). Therefore, the medical evidence appears to reveal that, as of February 2007, Plaintiff had both an immune deficiency disorder and chronic sinusitis that was resistant to treatment and was still occurring.[1] In March 2007, Dr. McLaughlin suggested that Plaintiff begin IVIG therapy to keep Plaintiff's sinus infections under better control, and Plaintiff then went on IVIG therapy in April 2007. (R. 203, 205). Therefore, contrary to the ALJ's assertions, the uncontradicted, objective medical evidence reveals that Plaintiff was receiving IVIG therapy to

---

[1] In fact, on October 21, 2009, Dr. McLaughlin noted that Plaintiff's sinusitis had been very difficult to treat with multiple courses of antibiotics and other sinus medications until Plaintiff started her intravenous immunoglobulin ("IVIG") therapy sessions. (R. 335). Dr. McLaughlin opined that Plaintiff met the criteria of Listing 14.07A because Plaintiff had an immune deficiency disorder coupled with sinusitis that was resistant to treatment. (R. 335).

treat Plaintiff's recurrent, chronic sinusitis that was previously difficult to treat and would not respond properly to multiple courses of antibiotics and other medications.

The question presented in Plaintiff's situation, then, is: What happens when the sinus infections go away and are no longer recurring ostensibly because of the IVIG therapy?[2]

The parties should be prepared to discuss whether, assuming Plaintiff initially met Listing 14.07A when she had an immune deficiency disorder coupled with sinusitis that was resistant to treatment, Plaintiff's impairment continued to meet Listing 14.07A after the sinus infections were controlled by IVIG therapy.

In the alternative, the parties should be prepared to discuss why Plaintiff's impairment did not at least "substantially equal" Listing 14.07A given that: (1) Plaintiff's impairment initially met Listing 14.07A; (2) the evidence demonstrates that the IVIG treatments are medically necessary to keep Plaintiff's sinus infections from recurring; and (3) the IVIG treatments are debilitating both on the day of the treatment and the day after.

**Issue 3:**

In addition to whether or not Plaintiff's impairment met Listing 14.07A, the parties should be prepared to address the hypothetical question that was posed to the vocational expert ("VE"). The ALJ found that Plaintiff was not disabled

---

[2]The record reveals that these IVIG therapy sessions occur once every four weeks (13 times a year) and are never expected to cease.

because she retained the residual functional capacity to perform her past work as an attorney as she actually performed it. The ALJ indicated that he based this determination on the testimony of the VE, John Grenfell, Ph.D. The ALJ explained that "Dr. Grenfell's testimony indicates the above residual functional capacity does not preclude work as an attorney as the claimant actually performed it because the claimant worked out of her home, set up her own hours, and worked less than 8 hours per day." (R. 28). However, a careful review of the hypothetical question and the VE's response reveals that the VE did not express an opinion regarding whether Plaintiff could perform her past work as she actually performed it. The VE's full answer to the ALJ's hypothetical question incorporating Plaintiff's residual functional capacity was:

> Well, she performed her job working out of her home and setting up her own hours and less than eight hours a day. I would suggest that she could not do her job as it is generally performed.

(R. 57).

That response does not specifically address whether Plaintiff can perform her past work as she actually performed it. The ALJ did not ask any follow-up questions to resolve the discrepancy. The Magistrate Judge believes that may be an error that requires remand, as the ALJ is not permitted to assume what the VE's answer would have been. The parties should also be prepared to address whether the ALJ's hypothetical question to the VE should have included the need to miss work two days every four weeks. Plaintiff testified that her IVIG treatments occurred once every four weeks for a total of 13 times a year, that they were medically necessary, that they required at least a five-hour day at the

doctor's office, and that they were debilitating for that day and the next day as well.  This is consistent with all of the objective medical evidence as well.  It appears that, based on Plaintiff's testimony and the objective medical evidence, this additional limitation should have been included in Plaintiff's RFC and the hypothetical question to the VE.

In conclusion, the parties will be provided with the opportunity to present oral argument at the hearing.  They should be prepared to address whether Plaintiff's impairment met or substantially equaled Listing 14.07A.  The parties should also address the perceived flaws in the hypothetical question that the ALJ posed to the VE.

**SO ORDERED.**

**Dated:**  May 2, 2012

_____
William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Electronic copies to:**

Steve Barber
BARBER & BAUER, LLP
steve@barlegal.net

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov